THE STATE OF OHIO, APPELLEE, *v.* CLARK, APPELLANT.

(No. 52528 — Decided April 11, 1988.)

*John T. Corrigan,* prosecuting attorney, and *Dominic Del Balso,* for appellee.

*Richard H. Drucker,* for appellant.

JOHN V. CORRIGAN, J. Appellant, Arnold Clark, was indicted in July 1985 for felonious assault, R.C. 2903.11, kidnapping, R.C. 2905.01, and rape, R.C. 2907.02 (all with firearm specifications) and was convicted of all counts. The case was tried to the judge who found that a firearm was used during the kidnapping and rape but not during the felonious assault. Appellant was sentenced to concurrent sentences of five to twenty-five years (for kidnapping) and five to twenty-five years (for rape) and a consecutive term of three years for the firearm. In his appeal appellant raised the following assignments of error.

I

"The trial court erred in convicting the defendant under O.R.C. Section 2907.02 because appellant was married to the alleged victim, Priscilla Clark, at the time of the incident."

At the time of the indictment, R.C. 2907.02(A) stated (see 139 Ohio Laws, Part I, 523, 538): "No person shall engage in sexual conduct with another, not the spouse of the offender * * *." "Spouse" was defined in R.C. 2907.01(L) (see 136 Ohio Laws, Part I, 316, 318):

"(L) 'Spouse' means a person married to an offender at the time of an alleged offense, except that *such person shall not be considered the spouse* when any of the following apply:

"(1) When the parties have entered into a written separation agreement authorized by section 3103.06 of the Revised Code;

"(2) *During the pendency of an ac-*

*tion* between parties *for* annulment, *divorce,* dissolution of marriage, or alimony;

"(3) In the case of an action for alimony, after the effective date of the judgment for alimony." (Emphasis added.)

The victim, Priscilla Clark, was still married to the appellant at the time of the incident on July 9, 1985, but had filed a complaint for divorce in April 1985 to which appellant had answered. The incident occurred during the time the action for divorce was pending and the victim was not his spouse for purposes of R.C. 2907.02. Assignment of Error No. I is overruled.

II

"The O.R.C. Section 2907.01(L)(2) definition of a spouse is unduly vague or ambiguous and could not give fair notice to a defendant as to its application and intention as such notice is required by the Due Process Clause found in the Fourteenth Amendment of the Constitution of the United States."

R.C. 2907.01(L)(2) stated that one married to another is not considered the spouse "[d]uring the *pendency* of an action" for divorce (emphasis added). "Pendency" is defined as "the state of being pending" and "pending" is defined as "through the period of continuance or indeterminacy of" or "during." Webster's Third New International Dictionary (Unabr. 1986) 1669.

"Pending" is also defined in a legal sense:

"Pending. Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment.

"Pending means awaiting an oc-

currence or conclusion of action, period of continuance or indeterminacy. Schull Const. Co. v. Board of Regents of Ed., 79 S.D. 487, 113 N.W.2d 663, 665." Black's Law Dictionary (5 Ed. 1979) 1021.

Appellant had the notice required. Assignment of Error No. II is overruled.

### III

"The appellee failed to prove each and every allegation beyond a reasonable doubt as required by [the] Due Process Clause and under Section 2901.05 of the Ohio Revised Code."

Priscilla Clark testified that she was still married to the appellant on July 9, 1985, but had filed for divorce a few months before. She testified to the following account: Appellant spoke to her at work and she accompanied him to his car outside the store so that he could show her something. He "cut me across my eye and then he pushed me. It wasn't a knife. It was a little blade thing. I didn't see it before then." She had seen him with a yellow razorlike box cutter at other times. She ran but he caught her and dragged her to the car. He forced her into the passenger seat but she jumped out the window. He cut her on the neck and face. Appellant put her in the driver's seat, sat on her and drove to his house. Once inside he showed her a gun in the dining room, took her to the bedroom, loaded a different gun and threatened to kill her if she did not take off her clothes. He forced her to have intercourse.

Her brothers and sister arrived and at first appellant refused to let her leave and threatened to kill them if they tried to enter, but eventually he let her go.

Although she was not treated for rape (but did receive stitches), she was asked by the treating physician what she would do if she were pregnant. She had numerous cuts and bruises.

A co-worker of the victim testified that she saw the victim on the ground screaming. Appellant had his hands wrapped in the victim's hair. A security guard stated that appellant had her by the hair.

The victim's brother, Maney Marks, testified that appellant said he was not going to let her out and appellant snatched her from the window. Marks and Dayton Freely, the victim's other brother, said Freely had a gun himself but it was in his car during the incident and he never told appellant he had one.

No knife-like instrument was recovered from appellant's house. The firearm loaded in the bedroom was operable.

Appellant testified that he slapped the victim with his keys in his hand. He insisted that she agreed to go to the house where he had to unlock two doors. (The victim said one was unlocked.) She propositioned him, he said, and no force was involved. Her family arrived with guns and the victim hollered that he was not hurting her. (The family came after a co-worker called to report the incident at the store.)

There was evidence that appellant caused serious physical harm to the victim. The photographs show serious bruises and several cuts for which she received stitches. But he clearly caused physical harm by means of a deadly weapon—the razor-like instrument he cut her with and successfully disposed of en route to the house. The cuts were not from the keys. The instrument was clearly capable of inflicting death and was used as a weapon. R.C. 2923.11(A).

Appellant engaged in sexual conduct with the victim (when she was not his spouse) by force or threat of force (at gunpoint) and used an operable firearm at the time.

Last, appellant restrained her of

her liberty to terrorize her (after the family arrived) and failed to release her in a safe place and unharmed. The judgment was not against the manifest weight of the evidence. See *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 172, 10 O.O. 3d 340, 341-342, 383 N.E. 2d 132, 134.

The decision of the trial court is affirmed.

*Judgment affirmed.*

NAHRA, C.J., and PRYATEL, J., concur.