OPINION
Defendant-appellant, Maurice MayDillard, appeals his conviction in the Warren County Court of Common Pleas for possession of a deadly weapon while under detention.
Appellant is an inmate at Lebanon Correctional Institution ("LCI") in Warren County, Ohio. Appellant is serving a seven to twenty-five year term of imprisonment for aggravated robbery and kidnapping. Appellant was sentenced in 1994.
On October 21, 1998, at approximately 7:30 a.m., appellant entered the cell of inmate named Smith, located on the third range (floor) of "G Block" at LCI. Appellant had in his possession a safety shaving razor from which the plastic guards had been removed to expose the blades. Appellant brandished the razor at Smith in an attempt to collect a debt owed to appellant by Smith. A struggle ensued.
The confrontation drew the attention of Corrections Officers James O. Jones and Michael Washington. Both heard the commotion, as well as Smith yelling for help. C.O. Jones arrived at Smith's cell first and found Smith holding appellant from behind. C.O. Jones yelled for the inmates to separate, but they did not do so. C.O. Washington arrived, and the inmates were pulled apart and handcuffed. Smith's foot was cut during his struggle with appellant.
C.O. Washington conducted a pat down search of appellant. He felt something in appellant's pocket, and when he reached into the pocket, his finger was cut on a sharp object. At that time, Corrections Lieutenant James C. Rice arrived on the scene and ordered C.O. Washington to the infirmary for treatment. C.O. Washington was examined and sent to the emergency room, where he received stitches for his injury.
Lt. Rice took appellant to the captain's room, where appellant was searched. Lt. Rice removed the razor from appellant's pocket and sealed it in an evidence bag. Reports were written on the incident, and appellant was given a citation for prison rules violations.
Appellant was later interviewed by Lt. Robert Patterson of the Ohio State Highway Patrol about the incident. Appellant stated that he went to Smith's cell to collect a debt of cigarettes. Appellant stated that he took the razor because Smith was physically larger, and he expected a confrontation. Appellant had decided that he would use the razor to show that he "meant business," and that, even if Smith beat him, he would at least leave Smith scarred.
On February 5, 1999, appellant was indicted on one count of possession of a deadly weapon while under detention in violation of R.C. 2923.131(B), a felony of the second degree. A jury trial was held on June 1, 1999. C.O. Jones, C.O. Washington, Lt. Rice, Lt. Patterson, and other officers testified for the state. The jury found appellant guilty of the charge. A sentencing hearing was held that same day, at which appellant was ordered to serve a seven-year term of imprisonment, consecutive to the sentence he was currently serving. Appellant appeals, raising a single assignment of error:
 THE STATE FAILED TO PROVE ESSENTIAL ELEMENTS OF THE OFFENSE, THEREFORE THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 In his assignment of error, appellant contends that the state failed to present evidence that the razor he possessed was a deadly weapon. Because appellant fails to differentiate between a challenge to the sufficiency of the evidence and a challenge based upon the manifest weight of the evidence, we will apply both standards of review.
Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386, rehearing/reconsideration denied, 79 Ohio St.3d 1451. When making this inquiry, the appellate court must determine whether the state has met its burden of production at trial. The court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." Id. at 390 (Cook, J., concurring). Thus, the appellate court, after viewing the evidence in a light most favorable to the prosecution, must decide whether a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Smith (1997), 80 Ohio St.3d 89, 113, rehearing/reconsideration denied, 80 Ohio St.3d 1471, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. Thompkins, 78 Ohio St.3d at 386-87. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 2218. In taking on this role,
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Martin (1983), 20 Ohio App.3d 172, 175. A decision will not be disturbed on appeal if reasonable minds could arrive at the conclusion reached by the trier of fact. State v. Fields (1995), 102 Ohio App.3d 284, 287.
R.C. 2923.131(B) provides:
 No person under detention at a detention facility shall possess a deadly weapon.
"Deadly weapon" is defined in R.C. 2923.11(A):
 "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.
A deadly weapon, as defined in R.C. 2923.11(A), must be
 an instrument capable of killing a person by virtue of its design, or by virtue of its manner of use. An instrument, no matter how innocuous when not in use, is a deadly weapon if it is of sufficient size and weight to inflict death upon a person, when the instrument is wielded against the body of the victim or threatened to be so wielded. The manner of use of the instrument, its threatened use, and its nature determine its capability to inflict death.
 A deadly weapon may also be defined as an instrument of sufficient size and weight and of such shape and that it may be grasped in the hands in such a way that that it may be used upon or directed against the body of another in a manner and with sufficient force to kill the other person.
 State v. Deboe (1977), 62 Ohio App.2d 192, 193-194. See, also, State v. Workman (1992), 84 Ohio App.3d 534. It must not only be shown that the instrument was capable of inflicting death, it must be proven that the instrument was either (1) designed or specifically adapted for use as a weapon; or (2) possessed, carried, or used as a weapon. State v. Anderson (1981), 2 Ohio App.3d 71, 72.
It is well-established that a razor may be a "deadly weapon" by the manner of its use or adaptation. Workman,84 Ohio App.3d at 536; State v. Clark (1988), 43 Ohio App.3d 104, 106, jurisdictional motion overruled, 39 Ohio St.3d 712; State v. Dykes
(Nov. 29, 1996), Lake App. No. 95-L-108, unreported; State v.Smith (May 20, 1993), Cuyahoga App. No. 62427, unreported; Statev. Correa (Nov. 23, 1983), Cuyahoga App. No. 46633, unreported. Cases which have found a razor not to be a deadly weapon involve circumstances where the razor was used or possessed consistent with its legitimate purpose, such as a barber's razor or a pocket knife used for cutting packing tape and rope. Anderson, 2 Ohio App.3d 71;State v. Moore (Apr. 17, 1989), Butler App. No. CA88-06-087, unreported.
Appellant contends that the state failed to present testimony tending to show that the razor was a deadly weapon. The state is not required to provide specific testimony that a razor is a deadly weapon where "[s]uch an evaluation [is] fairly prosaic and one not requiring particular skill, education or experience in a particular art, science, trade, business, profession or vocation."State v. Overstreet (Apr. 14, 1982), Hamilton App. No. C-810446, unreported. This is especially so where the instrument is one readily identifiable as inflicting death. Dykes, citing Anderson,2 Ohio App.3d at 72. Where the instrument used has been so adapted as to be capable of inflicting death and is then used in a manner consistent with such an unlawful purpose, the jury may reasonably conclude, without expert testimony, that the instrument is a deadly weapon as defined in R.C. 2923.11(A).
In the present case there was before the jury sufficient evidence from which it could find that the razor possessed by appellant was a deadly weapon. The state presented the testimony of C.O. Washington, who was injured by the razor, and Lt. Rice, who removed the razor from appellant's possession. Lt. Patterson testified that appellant, in his statement, conveyed that his purpose in possessing the razor was to use it as a weapon. The razor was introduced into evidence, and the jury was able to see for itself that the razor had been adapted, by removing the plastic guards, to function as a deadly weapon.
The state presented sufficient evidence to establish that the razor possessed by appellant was adapted to be a deadly weapon and was brandished by appellant as a deadly weapon. Appellant presented no testimony that he was using the razor in a manner consistent with its legitimate purpose.
After a thorough review of the record, we find that there was sufficient evidence presented for the trier of fact to find that the essential elements of the offense were proven beyond a reasonable doubt. We cannot say that the jury lost its way. Accordingly, appellant's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.