JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant George Tucker ("appellant") appeals his conviction for aggravated robbery, in violation of R.C. 2911.01. For the reasons stated below, we affirm the decision of the trial court.
 I. {¶ 2} The facts adduced at trial are largely not in dispute. On May 23, 2002, between the hours of 10:00 a.m. and 11:00 a.m., appellant and the victim, Mark Tableck ("Tableck"), met at Tableck's house in order to finalize the sale of Tableck's 1984 Oldsmobile 88.[1] Appellant offered to pay $200 for the vehicle.[2] Tableck and appellant then drove together to pick up their respective paychecks, transfer title, and obtain the appropriate tags for the vehicle. The parties proceeded back to Tableck's residence, where both men departed company, indicating that they would see each other at work.
 {¶ 3} Tableck reported to work at approximately 3:00 p.m. Although appellant began his shift at 4:00 p.m., by 4:30 p.m. he had not yet appeared for work. At approximately 6:00 p.m., the machine Tableck worked with broke down and he was sent home. Appellant never appeared for work.
 {¶ 4} At approximately 8:00 p.m., Tableck heard appellant pull into his driveway. Appellant addressed Tableck, saying, "Man, I fixed the brakes, I put four new tires on the car, and I'm in a jam. My wife — I need $35 bond to bail my wife out of jail." Tableck gave appellant $40 and appellant immediately left the home.
 {¶ 5} Later that night, at approximately 12:30 a.m. on May 24, 2002, appellant returned to Tableck's home demanding an additional $60. Appellant stated, "I have your $40. Give me $60. I have a hundred dollar bill." Tableck replied and asked for the hundred dollar bill so that he could give appellant his change. Appellant indicated that the hundred was in the car. Tableck grabbed three $20 bills and told appellant that he would accompany him to the car to get the hundred. Appellant replied, "Oh, don't you trust me?" Tableck testified that appellant seemed as if he had been "smoking the pipe."[3]
 {¶ 6} Appellant then punched Tableck in the jaw and tackled him over the couch. Appellant pulled out a box cutter and placed it to Tableck's stomach, stating, "Give me the money," to which Tableck responded, "No way. Fuck you." Appellant then withdrew the blade from Tableck's stomach and placed it to Tableck's throat, threatening to cut him. Appellant exclaimed, "I don't want to do it, but I'll do it." Tableck responded, "You'll have to kill me." Appellant then jumped up and ran towards the door proclaiming, "I'm all messed up on this shit."
 {¶ 7} Following the incident, Tableck elected to go to work the following day and see if appellant would apologize and pay the money for the vehicle. Tableck testified that he did not immediately call the police, in part because of his lack of trust in the police.[4]
 {¶ 8} On June 24, 2002, the Cuyahoga County Grand Jury indicted appellant for aggravated robbery. On July 9, 2002, appellant pled not guilty and the matter was assigned. On August 15, 2002, the matter was called for trial. The record reflects that appellant executed a jury waiver in the presence of the court and his attorney. On August 15, 2002, appellant was found guilty of aggravated robbery. On September 25, 2002, appellant was sentenced to a three-year term of incarceration. The court indicated that it would consider judicial release following the completion of one year. This timely appeal followed.
 II. {¶ 9} In his first assignment of error, appellant argues that his "conviction was not supported by sufficient evidence where the state failed to present evidence that Mr. Tucker used a deadly weapon." This assignment of error is without merit.
 {¶ 10} The Ohio Supreme Court has established the applicable standard for determining whether a conviction is supported by sufficient evidence:
"The relevant inquiry is whether, after reviewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 11} Appellate review of the trial court's determination is limited to whether there is sufficient probative evidence to support the trier of fact's finding as a matter of law. State v. Thompson (1987),78 Ohio St.3d 380, 386. It is recognized that the trier of fact is in a far better position to evaluate the testimony of witnesses than a reviewing court. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 12} In the case sub judice, appellant argues the state failed to establish that the box cutter constituted a deadly weapon. Specifically, appellant argues that the state: 1) failed to present evidence as to whether the box cutter was capable of causing death; 2) failed to introduce the actual box cutter used or one similar to it; and 3) failed to introduce into evidence the dimensions of the box cutter, the size of the blade, or whether the blade was even sharp. It is opined by appellant that, because the state failed to produce such evidence, the "capable of inflicting death" element of R.C. 2923.11 had not been met.
 {¶ 13} R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." This court has previously held that a "razor-like instrument" constitutes a deadly weapon. State v. Clark (1988), 43 Ohio App.3d 104. Additionally, this court has upheld a conviction for felonious assault committed with a box cutter. State v. Barnes (Aug. 10, 2000), Cuyahoga App. No. 76560.[5] Furthermore, the court of common sense holds that a box cutter may constitute a deadly weapon.
 {¶ 14} Appellant's first assignment of error is overruled.
 II. {¶ 15} In his second assignment of error, appellant argues that his "conviction was against the manifest weight of the evidence." This assignment of error is also without merit.
 {¶ 16} While sufficiency of the evidence is a judicial determination made at the close of the state's case, manifest weight concerns whether the jury, or in this case the judge, lost its way creating a manifest miscarriage of justice. Thompkins, supra. "Judgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Whatley v. Tokheim Corp.
(Jan. 30, 1986), Cuyahoga App. No. 49407, citing C.E. Morris v. FoleyConstruction Co. (1978), 54 Ohio St.2d 29. The credibility of witnesses and the weight given to their testimony are primarily matters for the trier of fact. DeHass, supra.
 {¶ 17} Appellant presents two arguments in support of his second assignment of error. First, appellant argues that because the state failed to show that the box cutter was a deadly weapon, his conviction was not properly supported. As discussed in section I of this opinion, a box cutter may by considered a deadly weapon for purposes of R.C.2923.11(A). Therefore, appellant's argument is overruled.
 {¶ 18} Secondly, appellant argues that the verdict was against the manifest weight of the evidence because the state failed to show, beyond a reasonable doubt, that he committed aggravated robbery.[6] Appellant asserts that Tableck had a history of drug use, including cocaine, and therefore his testimony was not trustworthy and the court improperly relied upon it. Further, appellant's version of the events contradicts Tableck's version. Lastly, appellant argues that the physical evidence does not align with Tableck's version of the facts.
 {¶ 19} There is nothing in the record to suggest that the trial court lost its way in finding appellant guilty of aggravated robbery. The state presented four witnesses in this case, including Tableck. Appellant neither took the stand nor presented any witnesses.
 {¶ 20} The trial judge, as the trier of fact, had the duty to weigh the evidence and determine the credibility of the witnesses' testimony. According to appellant's version of the facts, "Mark [Tableck] then offered to come inside to get my hand clean to catch a buzz. We smoked on some weed and did a couple lines of coke."[7] Robert L. Shultz, operations manager at Con-Pak, testified, however, that when Tableck appeared for work on the afternoon of May 23, 2002, Tableck did not appear to be under the influence of anything. Further, Tableck testified that he did not do any drugs that day. Appellant's version of the facts are unsubstantiated by any witness.
 {¶ 21} Appellant's arguments that the physical evidence does not support the state's case are also unfounded. The trial judge, as the trier of fact, certainly could have found the scrapes and abrasions suffered by Tableck to be consistent with the proffered testimony. Again, appellant offered no substantive evidence to contradict Tableck's account of the events. The trial court's reliance on the testimony proffered certainly did not result in a miscarriage of justice. The court had before her credible and reliable evidence on which to rely in finding appellant guilty of aggravated robbery.
 {¶ 22} Appellant's second assignment of error is overruled. The decision of the trial court is affirmed.
MICHAEL J. CORRIGAN, P.J. and TIMOTHY E. McMONAGLE, J. CONCUR
[1] Tableck testified that he and appellant work together at Con-Pak.
[2] After appellant initially offered to pay $100 on May 23, 2002, and the difference one week later, the parties agreed later that day that appellant would pay $75 initially and $125 in one week.
[3] "Smoking the pipe" is a reference to smoking crack cocaine.
[4] Tableck had been stopped, in the past, on multiple occasions while walking to work. The police would stop him and run his social security number. It is unclear as to the exact circumstances, but Tableck testified that he received a $99 citation for riding his bicycle in the street.
[5] Felonious assault is defined as knowingly causing physical harm to another or causing physical harm by means of a deadly weapon. Id.; R.C.2903.11.
[6] Aggravated robbery is defined as "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *" R.C. 2911.01.
[7] This statement was provided by appellant upon his arrest and was read aloud, in court, by state witness Detective Dennis Bergansky.