OPINION
Defendant-appellant, Quantez Wright, appeals the judgment of the Franklin County Court of Common Pleas, convicting him of two counts of aggravated robbery with firearm specifications, one count of engaging in a pattern of corrupt activity, one count of aggravated murder with a firearm specification, one count of felonious assault with a firearm specification, and one count of kidnapping with a firearm specification, pursuant to a jury trial.
The evidence and testimony submitted at appellant's trial establish the following factual background. The above-noted charges against appellant arose out of two different store robberies. The first robbery of Don's No. 1 Quick Stop ("Don's Quick Stop") on February 20, 1997, resulted in the murder of Mustafa Rabia, a co-owner of the store, and the wounding of Mohamed Fitiwi, a clerk at the store. The second robbery of Super Fresh Foods, on March 12, 1997, was also an armed robbery; however, no one was injured in the Super Fresh Foods robbery.
There was a videotape of the Super Fresh Foods robbery and, as a result of the tape, appellant was arrested and interrogated. Appellant confessed to the Super Fresh Foods robbery, identified his accomplices, and told the detectives that he had been a member of a gang called the "Crips." During the interrogation, appellant was also asked if he knew anything about the Don's Quick Stop homicide/robbery. Appellant indicated that he had heard other gang members expressing their intentions to rob Don's Quick Stop. Appellant identified Faith Johnson and Teia Smith-Armstrong as two suspects in the crime.
Columbus Police Department Detectives interrogated Teia Smith-Armstrong. Smith-Armstrong initially denied any involvement in the homicide/robbery at Don's Quick Stop; however, after further interrogation, she admitted to participating in the robbery with Johnson, appellant and appellant's brother. Smith-Armstrong also initially confessed to shooting the two individuals working at the store; however, subsequently, Smith-Armstrong claimed that it was appellant, not she, who did the shootings.
Columbus Police Department Detectives also interrogated Faith Johnson. Johnson told the detectives that she, Smith-Armstrong, appellant and appellant's brother were involved in the crime. She implicated appellant as the one who fired his gun during the homicide/robbery.
Don's Quick Stop employee Mohamed Fitiwi testified at trial for the state. Fitiwi confirmed that he and Rabia were working at Don's Quick Stop during the night of the homicide/robbery. He testified that he was mopping the store in preparation for its closing when three people entered, shouting "Hold up! Hold up! Hold up!" According to Fitiwi, he was shot in the arm by one of the robbers. Fitiwi stated that he went into the restroom of the store after he was shot and also noted that he heard more shots while in the restroom. After five to ten minutes, Fitiwi left the restroom and found Rabia lying behind a counter and noticed that Rabia had been shot. Franklin County Deputy Coroner Keith Norton verified that Rabia died from gunshot wounds.
The jury convicted appellant of the previously mentioned offenses. On the aggravated murder charge, appellant was sentenced to life imprisonment with parole eligibility after twenty-five years. Appellant received three years imprisonment each on the two aggravated robbery charges, three years for engaging in a pattern of corrupt activity, and two years for felonious assault. Appellant was not sentenced on the kidnapping charge because the trial court found that it merged with the aggravated robbery charge. As well, the trial court imposed six years imprisonment for the firearm specifications. The trial court proceeded to order appellant to serve several of the sentences consecutively for an aggregate sentence of thirty-seven years to life.
Appellant appeals, raising four assignments of error:
ASSIGNMENT OF ERROR NUMBER ONE:
 THE TRIAL COURT ERRED WHEN IT RULED THAT THE DEFENDANT COULD NOT QUESTION THE STATE'S WITNESSES ABOUT OTHER CRIMES THE STATE HAD AGREED NOT TO PROSECUTE THEM FOR IN EXCHANGE FOR THEIR TESTIMONY AGAINST THE DEFENDANT WITHOUT ALSO OPENING THE DOOR FOR THE STATE TO INQUIRE INTO OTHER CRIMES THE DEFENDANT MAY HAVE COMMITTED. THIS VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO CONFRONT AND CROSS-EXAMINE THE WITNESSES AGAINST HIM AND HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS, A FAIR TRIAL AND TO PRESENT FAVORABLE EVIDENCE ON HIS BEHALF.
ASSIGNMENT OF ERROR NUMBER TWO:
 THE STATE ENGAGED IN MISCONDUCT WHEN IT ATTEMPTED TO IMPROPERLY IMPLY THROUGH INADMISSIBLE HEARSAY AND INNUENDO THAT IT HAD A WITNESS WHO WOULD CORROBORATE ITS THEORY THAT FOUR SUSPECTS WERE INVOLVED IN THE ROBBERY-MURDER. THIS VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO CONFRONT AND CROSS-EXAMINE WITNESSES AND HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.
ASSIGNMENT OF ERROR NUMBER THREE:
 THE DEFENDANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN A POLICE OFFICER WAS ALLOWED TO PRESENT OPINION TESTIMONY INDICATING THAT HE BELIEVED THAT THE DEFENDANT WAS THE SHOOTER AND NOT THE OTHER SUSPECT WHO HAD INITIALLY CONFESSED TO THE MURDER, THEREBY IMPROPERLY RENDERING AN OPINION AS TO THE GUILT OF THE DEFENDANT.
ASSIGNMENT OF ERROR NUMBER FOUR:
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY THAT IT DID NOT HAVE TO BE UNANIMOUS IN REJECTING THE GREATER OFFENSE OF AGGRAVATED MURDER BEFORE CONSIDERING THE LESSER OFFENSE OF INVOLUNTARY MANSLAUGHTER AND BY INSTRUCTING THE JURY THAT IT HAD TO FIND THE DEFENDANT NOT GUILTY OF AGGRAVATED MURDER BEFORE IT COULD CONSIDER THE LESSER OFFENSE OF INVOLUNTARY MAN-SLAUGHTER.
Appellant's first assignment of error concerns the trial court's decision to overrule his motion in limine. During a hearing on the motion, appellant indicated that he wanted to cross-examine Smith-Armstrong and Johnson about the extent of their plea bargain agreement with the state. Appellant noted that part of the cross-examination would concern other crimes that the witnesses were involved in, but that the state had agreed not to prosecute. The state had previously indicated that, if appellant asked about these other crimes, it would inquire into appellant's involvement in the crimes. Through the motion in limine, appellant asked the trial court to prohibit the state from making such an inquiry. Appellant argued that the inquiry would improperly introduce the jury to appellant's involvement in other crimes. The trial court ruled that, if appellant brought up the non-prosecuted crimes, it would open the door for the state to inquire into appellant's involvement in the offenses. Appellant asserts that the trial court's ruling violated his constitutional rights to due process and to confront and cross-examine witnesses. We disagree.
Under Evid.R. 404(B), evidence on a defendant's "other crimes, wrongs, or acts" is admissible to establish the identity of the accused in an alleged crime. See, also, State v. Jamison (1990), 49 Ohio St.3d 182,185-186. Here, during discussions on the motion, the state acknowledged the applicability of Evid.R. 404(B) to this case and demonstrated such applicability during a voir dire of the witnesses outside of the jury's presence. The state asked Smith-Armstrong whether appellant used the same gun during the non-prosecuted robberies and the robberies subject to the trial in this case. Smith-Armstrong confirmed that the gun appellant used to rob Don's Quick Stop was the same gun he used in the non-prosecuted robberies. "Evidence tending to show that the same gun was used in both crimes is pertinent to the issue of identity" under Evid.R. 404(B). State v. Williams (1995), 73 Ohio St.3d 153, 158.
In addition, the state asked Johnson to describe the clothing appellant wore during the non-prosecuted robberies and the robberies subject to the trial in this case. Johnson stated that appellant wore a mask during the non-prosecuted robberies and the robberies subject to the trial in this case. Appellant using a mask to commit these robberies is also pertinent to the issue of identity under Evid.R. 404(B). See State v. Marshall (2000), 136 Ohio App.3d 742, 752.
Thus, based on the above, the state could have properly used appellant's involvement in the non-prosecuted crimes to establish identity under Evid.R. 404. Therefore, the state had authority to inquire about the non-prosecuted crimes regardless of appellant's decision to cross-examine Johnson and Smith-Armstrong about the extent of their plea bargain agreement. In the final analysis, where the prosecutor could have questioned Johnson and Smith-Armstrong regarding defendant's involvement in the other, uncharged crimes pursuant to Evid.R. 404(B), regardless whether defendant questioned these witnesses concerning their involvement in the crimes, defendant's constitutional rights to due process and to confront and cross-examine witnesses were not violated. Accordingly, we overrule appellant's first assignment of error.
Appellant's second assignment of error concerns the testimony of Columbus Police Detectives Yvonne Taliaferro and Stan Latta. Appellant contends that the state engaged in prosecutorial misconduct when questioning these witnesses. On direct examination, the state asked Detective Taliaferro about conversations she had with witnesses at the scene of the Don's Quick Stop homicide/robbery. In response to the questions, Detective Taliaferro indicated that she remembered talking to a person named Kenji Harris and also to a few other people present outside the store. The state then asked the detective if these people were able to provide her with information about individuals who had left the store after the homicide/robbery. The detective indicated that they had and that she had relayed this information to other detectives assigned to the case. The state then asked, "How many people did you relay left the store from what you heard?" Appellant objected to the question, and the trial court sustained the objection. Thereafter, the state asked the detective if she had any idea "where this Kenji Harris is today?" The detective replied that she did not.
On redirect, Detective Taliaferro testified that she wrote a summary of her investigation and gave it to other detectives assigned to the criminal matter. The state asked the detective if the summary was accurate and if it disclosed the contents of conversations she had with witnesses. Detective Taliaferro replied that her report was accurate and that it did disclose whom she talked to and what they said. The state then asked as follows:
 Q. [STATE] AS FAR AS WHAT KENJI HARRIS SAID, IT'S ALL RIGHT THERE IN THAT DOCUMENT, ISN'T IT?
A: [DETECTIVE TALIAFERRO] YES, IT IS.
 Q. OKAY. INCLUDING THE NUMBER OF INDIVIDUALS.
A. YES.
Subsequently, the state called Detective Stan Latta and elicited the following testimony:
 Q. [STATE] AND THERE WAS AT LEAST ONE WITNESS THAT SAW INDEPENDENT SAW SOME THINGS THAT WENT ON OUT THERE; IS THAT TRUE?
A. [DETECTIVE LATTA] THAT'S TRUE.
Q. IS THAT PERSON'S NAME KENJI HARRIS?
 A. I BELIEVE THAT WAS. I DIDN'T DO THE INTERVIEW OF THAT INFORMATION, BUT I WAS AWARE OF IT.
Q. DO YOU KNOW HOW MANY PEOPLE HE SAID?
[DEFENSE COUNSEL]: OBJECTION.
THE COURT: SUSTAINED. * * *
Appellant contends that the state, through the above questioning, suggested to the jury, through improper innuendo, that it had witnesses it could not call that would have corroborated its theory that there were four robbers involved in the Don's Quick Stop homicide/robbery. According to appellant, we are required to reverse his convictions because the state's improper questioning constitutes prosecutorial misconduct. We disagree with appellant's contention that he is entitled to a reversal.
A defendant's conviction will not be reversed on grounds of prosecutorial misconduct if the alleged conduct did not prejudicially affect the substantial rights of the defendant. See State v. Smith (2000), 87 Ohio St.3d 424, 442. The state concedes that it attempted to elicit testimony regarding Kenji Harris' hearsay statements on the number of people involved in the Don's Quick Stop homicide/robbery. However, the questions were promptly objected to and the objections were sustained. The jury, therefore, was prohibited from hearing Harris' hearsay statements. During the trial court's preliminary instructions, the jury was informed:
 IF A QUESTION IS ASKED AND AN OBJECTION TO THE QUESTION IS SUSTAINED, YOU WILL NOT HEAR THE ANSWER. YOU MUST NOT SPECULATE AS TO WHAT THE ANSWER MIGHT HAVE BEEN OR THE REASON FOR THE OBJECTION. * * *
The trial court reiterated the same sentiment in its final instructions:
 * * * YOU MUST NOT SPECULATE AS TO WHY THE COURT SUSTAINED AN OBJECTION TO A QUESTION OR WHAT THE ANSWER TO SUCH QUESTION MIGHT HAVE BEEN. YOU MUST NOT DRAW ANY INFERENCE OR SPECU-LATE ON THE TRUTH OF ANY SUGGESTION INCLUDED IN A QUESTION THAT WAS NOT ANSWERED.
It is well-established that the jury is presumed to have followed the trial court's instructions. State v. Fears (1999), 86 Ohio St.3d 329,334. Thus, in this case, we must presume that the jury followed the above instructions and, therefore, did not speculate on Kenji Harris' hearsay statements regarding the number of individuals involved in the Don's Quick Stop homicide/robbery. Accordingly, the jury had no basis to suspect that Kenji Harris' statements would have corroborated the state's theory of the case. As such, appellant was not prejudiced by the above questioning, and we overrule appellant's second assignment of error.
Appellant's third assignment of error concerns Detective Latta's testimony regarding his decision to arrest appellant for murder. During the direct examination of Detective Latta, the state elicited the fact that the detective had interviewed a number of suspects. The state then asked the detective, "After all those interviews, and after your investigation, did you arrest someone for the murder of Mustafa Rabia?" The detective responded that he arrested appellant. The state then asked the detective about whom he decided to arrest on charges of manslaughter. The detective indicated that he arrested Smith-Armstrong, Johnson and appellant's brother for the manslaughter charges. During closing arguments, the state told the jury that the detective did not believe Smith-Armstrong's initial confession when she admitted to being the shooter at the homicide/robbery.
Appellant contends that Detective Latta was improperly allowed to demonstrate his personal opinion that appellant shot Rabia. However, the record establishes that Detective Latta's testimony did not constitute an expression on his opinion of appellant's guilt. On cross-examination, Detective Latta confirmed that an arrest is merely based on probable cause and that the probable cause standard is different than the reasonable doubt standard required in a court of law. Accordingly, we overrule appellant's third assignment of error.
Appellant's fourth assignment of error concerns the trial court's jury instructions and verdict form. The trial court instructed the jury that:
 IF YOU FIND THAT THE STATE HAS FAILED TO PROVE PURPOSE TO KILL BUT PROVED CAUSATION AND DEATH, YOU MAY ALSO CONSIDER INVOLUNTARY MANSLAUGHTER AS A LESSER OFFENSE OF AGGRAVATED MURDER.
A portion of the verdict form reads as follows:
 We, the jury in this case, find the Defendant Quantez Wright not guilty of Aggravated Murder but guilty of the lesser offense of Involuntary Manslaughter * * *.
Appellant contends that the trial court's instructions and verdict form constitute an improper "acquittal first" instruction, which erroneously conveyed to the jury that it had to find appellant not guilty of aggravated murder before it could consider the lesser offense of involuntary manslaughter. We disagree with appellant's contentions.
As asserted by appellant, the Ohio Supreme Court indicated that "acquittal first" instructions are invalid because they encroach "on the province of the jury to decide questions of fact and to arrive at a verdict based on all the evidence before it and all the various offenses on which it has been properly instructed." State v. Thomas (1988),40 Ohio St.3d 213, 219.
Nonetheless, in Thomas, the Ohio Supreme Court upheld the instructions under review because they did not "expressly require unanimous acquittal on the charged crime." Id. at 220. The instructions in Thomas contained "if you find" language similar to the above-noted instructions used in appellant's case. The instructions in Thomas stated, as an example:
 "* * * [I]f you find that The State has failed to prove beyond a reasonable doubt the element of prior calculation and design, then your verdict must be that the Defendant is not guilty of aggravated murder.
 "You will then proceed with your deliberations and decide whether The State has proven beyond a reasonable doubt all of the essential elements of the lesser crime of murder." [Id. at 220.]
The court in Thomas determined that the instructions had "negligible coercive potential" because the instructions spoke to the "jury's inability to find, whether unanimously or not, a certain element of a greater offense." Id. Accordingly, we have previously upheld analogous "if you find" instructions as not violating Thomas. See State v. Roe (Sept. 22, 1992), Franklin App. No. 92AP-334, unreported; State v. Greene (Mar. 31, 1998), Franklin App. No. 90AP-646, unreported (recognizing that "'[w]hat is of significance is that nowhere in the instructions were the jurors expressly told that they must unanimously find [the defendant] not guilty of a greater offense before they could consider a lesser offense'"). Thus, we reject appellant's contention that the trial court's jury instructions constitute improper "acquittal first" instructions.
Likewise, we reject appellant's contention that the verdict form improperly prohibited the jury from considering the verdict of involuntary manslaughter without first acquitting appellant of aggravated murder. In Greene, we reviewed a verdict form similar to the form in this case. The verdict form stated, as an example:
 We, the jury in this case, find the defendant * * * not guilty of murder, but guilty of a lesser offense of voluntary manslaughter * * *. [Id.]
We concluded in Greene that the language of the verdict form was proper and did not prevent the jury from considering the lesser offenses. Thus, we have no basis to conclude that the verdict form used in this case constituted an improper "acquittal first" instruction.
Therefore, based on the above, we conclude that the trial court's jury instructions and verdict form were not erroneous. As such, we overrule appellant's fourth assignment of error.
In summary, we overrule appellant's first, second, third and fourth assignments of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT, P.J., and BROWN, J., concur.