The STATE of Ohio, Appellant,

v.

MARSHALL, Appellee.■

[Cite as *State v. Marshall* (2000), 136 Ohio App.3d 742.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75688.

Decided Feb. 17, 2000.

744

*William D. Mason*, Cuyahoga County Prosecuting Attorney, *Edward M. Walsh, Anthony J. Kellon* and *Kimberly Mahaney*, Assistant County Prosecuting Attorneys, for appellant.

*Stephen McGowan*, and *William T. McGinty*, for appellee.

---

DYKE, Administrative Judge.

Appellant, the state of Ohio, is appealing the trial court's decision granting appellee-defendant Charles Marshall's motion *in limine* to preclude certain evidence. For the following reasons, we reverse and remand.

Charles Marshall was indicted for aggravated murder with two capital specifications and for three counts of aggravated robbery and three counts of kidnaping, with firearm specifications on all counts. These charges involved a robbery at a Papa John's Pizza Shop.

Appellee was found guilty of six of the seven counts. The jury found that the aggravating circumstances outweighed the mitigating factors, and recommended the death sentence. The trial court sentenced the defendant to death. Subsequently, the trial court vacated the sentence of death because the jury was not instructed on the option of life without parole.

The case was re-assigned to another judge. Defendant's motion for a new trial was granted.

Appellee's motion *in limine* was granted as to (1) a videotaped confession of the co-defendant, Robert Martin; (2) in-court identifications of appellee by Brianne Stewart and William Lain; and granted in part as to (3) another robbery which appellee committed at a Long John Silver's restaurant.

I

Appellant's first assignment of error states:

The trial court erred in precluding the admission of the videotaped confession of co–defendant Robert Martin. Martin was unavailable to testify. His statement was clearly a statement against interest, and corroborating circumstances indicated the trustworthiness of the statement. *State v. Gilliam* (1994), 70 Ohio St.3d 17, 635 N.E.2d 1242.

Robert Martin, the co-defendant, made a statement to the police denying any involvement in the Papa John's incident. A week later, Martin confessed to the police.

The police read Martin his rights. Martin indicated he understood these rights, and agreed to waive them. Martin stated as follows: Chuck, whom he also knew as Leon Gomez, proposed that they commit a robbery. Martin agreed. Someone drove them to Papa John's. The car parked around the corner, and Martin and Chuck "went up in there." Chuck hopped over the counter and ordered the employees to the back of the store. Then, Chuck took the manager to the front of the store and told him to open the safe.

Martin came into the store a minute or two after Chuck. Martin was in the front of the store, went to the back and took one look, and then returned to the front of the store. Martin did not speak to anyone in the store. He did not witness any struggle between the manager and Chuck. Martin heard shots, and Chuck indicated that he had shot the manager. Chuck used a black .38 revolver. Later in the statement, Martin said was standing outside as a lookout. Martin was wearing dark blue and white Fila tennis shoes. Martin gave an accurate description of appellee, stating that appellee was slightly shorter than himself. Martin said he did not know how appellee wore his hair, because he wore a skullcap. Other testimony established that appellee also went by the name Leon Gomez.

At the first trial, Brianne Stewart testified that she was working at a Papa John's restaurant the evening of December 22, 1996. Her manager, Rocco Buccieri, was present, along with the delivery driver, William Lain. Two young black males came in together. The taller male had a gun, and he wore a hood and a ski mask. The one with the gun ordered her, Bill Lain and Rocco to go to the back of the store. The man with the gun ordered Stewart and Lain to go into the storage closet, and ordered the other robber to watch the closet door. The other robber never said anything. From inside the closet, Stewart could see the feet of the robber who was watching the door. He wore dark blue and white Fila sneakers. The man with the gun ordered Rocco to go up front and open the safe. Stewart heard a scuffle, then heard gun shots. After the gunshots, the robber in the Fila shoes walked away from the door. When she came out of the closet, she saw that Rocco had been shot.

William Lain, the other Papa John's employee, corroborated Stewart's testimony. He added that the gun was a black .38.

At the first trial, Martin exercised his Fifth Amendment right and refused to testify. By the time the court granted the motions in limine for the second trial, Martin had been convicted in the Papa John's case.

 To be admissible, a hearsay statement must comply with the state hearsay rules, and also not violate the defendant's constitutional right to confront witnesses.

A recorded hearsay statement does not violate the Confrontation Clause if it falls into a firmly rooted hearsay exception or if the statement contains adequate *indicia* of reliability. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 721 N.E.2d 52. An accomplice's statement that implicates the defendant is not within a firmly rooted exception to the hearsay rule. *Madrigal, citing Lilly v. Virginia* (1999), 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117. The confession does not violate the Confrontation Clause if it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Lilly, Madrigal, supra.*

If the statement in question exonerates the accomplice, but implicates the defendant, the statement is not reliable. *Lilly, supra.* The fact that the accomplice's confession was corroborated by other evidence, that the accomplice was read his *Miranda* rights, and that parts of the confession implicated the accomplice was not sufficient under the circumstances of *Lilly* to constitute particularized guarantees of trustworthiness. Also, in *Lilly,* the declarant/co-defendant was intoxicated when he made the statements and the statement was in response to leading questions.

If the accomplice's confession states that the accomplice merely accompanied the defendant to the robbery, but did not participate, the statement is not admissible, despite corroboration by other evidence. *Madrigal, supra.* A voluntary confession, not made pursuant to a deal with the prosecution, and which implicates both the accomplice and the defendant has sufficient *indicia* of reliability. *State v. Smith* (Dec. 9, 1999), Cuyahoga App. No. 72089, unreported, 1999 WL 1129070.

In this case, Martin's entire narrative was self-inculpatory. He admitted to assisting in the robbery by acting as the lookout. Martin was not under the influence when he made the statement and was not responding to leading questions. Around the time of Martin's first statement, the police said they may be able to cut him some slack if he confessed. Martin was not offered a deal in exchange for the confession. Under these circumstances, we find that Martin's confession contained particularized guarantees of trustworthiness, and did not violate the Confrontation Clause.

To fall within the hearsay exception as a statement against interest under Evid.R. 804(B)(3), three conditions must be satisfied. *State v. Gilliam* (1994), 70 Ohio St.3d 17, 635 N.E.2d 1242. First, the declarant must be unavailable. A declarant asserting his Fifth Amendment right against self-incrimination and refusing to testify is considered unavailable. *Id.; State v. Landrum* (1990), 53 Ohio St.3d 107, 113, 559 N.E.2d 710, 719–720. In this case,

the court assumed that Martin would continue to refuse to testify. If Martin agreed to testify, it would be unnecessary to submit the confession as evidence.

Second, to qualify as a statement against interest, it must be shown that the statement tended to subject the declarant to criminal liability so that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. *Gilliam* and *Landrum, supra.* The statement was against Martin's interest because it subjected him to criminal liability for complicity. See *Gilliam, supra.*

Finally, Evid.R. 804(B)(3) requires that corroborating circumstances clearly indicate the trustworthiness of the statement before the statement against interest becomes admissible. *Landrum* and *Gilliam, supra.* A statement is more trustworthy if it is made voluntarily and corroborated by other witnesses' testimonies. *Gilliam, supra.* The fact that there are some inconsistencies does not preclude admissibility, if the circumstances establish that the statement is trustworthy. *Landrum, supra.*

In this case, much of Martin's statement is consistent with the testimony of the Papa John's employees. Martin said appellee jumped over the counter and put the employees in a closet. Then, appellee took the manager to the front of the store. Martin was wearing blue and white Fila sneakers during the robbery. Appellee used a black .38 revolver. Martin did not say anything during the robbery. Martin's statement that appellee wore a skullcap is not necessarily inconsistent with the witnesses' testimony, as appellee could have worn a skullcap underneath the mask and hood. The inconsistencies were: (1) Martin said he entered the store a minute or two after appellee, but the witnesses say they entered together. (2) Martin said he did not witness any scuffle between appellee and the manager. (3) The witnesses place Martin at the back of the store during the scuffle, but Martin said he was in the front. These inconsistencies were minor, and should not have resulted in exclusion of the evidence.

The trial court erred and abused its discretion in excluding the confession of Robert Martin.

Accordingly, this assignment of error is sustained.

## II

Appellant's second assignment of error states:

"The trial court erred in excluding any in-court identification of the accused by William Lain and Brianne Stewart."

Before Stewart completed her testimony, the court was excused for lunch. Stewart went to the back of the courtroom. The defendant stood up and Stewart

made eye contact with him. Stewart then recognized the defendant. She did not recognize him when he was seated.

During the robbery, Stewart saw appellee's eyes for thirty seconds to one minute. Stewart was about ten feet from the robbers. The eyes of the man with the gun looked similar to another Papa John's employees, but the robber was not the employee. A sketch artist drew a picture of the robber with the gun. The police showed photographs to Stewart, but she could not identify the robber.

William Lain testified in voir dire that the prosecutor asked him to look into the courtroom and see if he could identify the defendant. Lain saw a man walk in the courtroom from the side door, and knew that this man was the defendant. Lain felt that the defendant was the robber, based on his eyes, eyebrows, nose, and complexion. Lain got a good close look at the robbers.

After the robbery, Lain told the police that he did not know if he could identify the robbers, but he could try. Lain was shown photographs, but he did not identify any of the pictures.

Officer John Knack testified that Stewart and Lain were never shown a picture of appellee. Appellee refused to cooperate when his picture was taken. He kept changing his appearance. The police felt that they were unable to get a picture of appellee to use in a line-up.

▉▉▉ The exclusion of identification testimony is in the discretion of the trial court. See *State v. Pearson* (1996), 114 Ohio App.3d 168, 184, 682 N.E.2d 1086, 1096–1097; see, generally, *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 25, 514 N.E.2d 394, 400–401. The court's decision excluding evidence will not be disturbed unless the court's attitude was unreasonable, arbitrary or unconscionable. *Pearson, supra.*

▉▉▉ The test for exclusion of an identification is whether, in the totality of the circumstances, there was "a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140. The factors to be considered in determining whether an identification was reliable include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Id.; Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *State v. Jells* (1990), 53 Ohio St.3d 22, 559 N.E.2d 464. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Id.*

▉▉ Viewing the defendant when he is on trial is a suggestive identification procedure. *State v. Pearson* (1996), 114 Ohio App.3d 168, 682 N.E.2d 1086; *State*

*v. Green* (1999), Cuyahoga App. No. 74714, unreported, 1999 WL 754475. When the witness had a limited view of the perpetrator, the victim made mistakes in describing the robber, and the witness could not select the defendant's photo from a line-up, the identification was not so reliable as to outweigh the highly suggestive in-court identification procedure. *Pearson, Green, supra.*

■ Lain and Stewart identified appellee when he was on trial. Appellee was not wearing a jail uniform, however. Concerning the reliability of the identification, Stewart observed the robber's face for thirty seconds to a minute. The witnesses, especially Lain, indicated that they paid attention to the robbers' appearance. Stewart and Lain were only able to observe the robber's eyes, eyebrows, and part of his nose. Stewart may have been mistaken in describing the man with the gun as taller than the other robber, but different footwear could account for the slight difference in height. Otherwise, the limited descriptions of the assailant were accurate. The identifications took place nine months after the crime. The witnesses were never shown any photographs of appellee. The witnesses were certain that appellee was the robber with the gun. Based on all the circumstances, we find that the trial court abused its discretion in excluding the in-court identifications.

Accordingly, this assignment of error is sustained.

## III

Appellant's third assignment of error states:

"The trial court erred in limiting the number of 404(B) witnesses and exhibits to be offered at trial."

The state filed a notice of other acts evidence of other robberies committed by appellee at a Long John Silver's Restaurant. The trial court granted in part appellee's motion to exclude this evidence.

The Long John Silver's robberies were committed within months of the Papa John's robbery. The state would use this evidence to show the identity. The methods of all the robberies were similar. Two robbers participated. The employees were searched for cellular phones, then herded to a back room. Then, a manager was ordered to open the safe. A robber shot at people with a .38 in both robberies.

The judge allowed some evidence of the Long John Silver's robberies to establish identity. The court found that the state could introduce the testimony of Long John Silver's employees Vershoun Jackson and Dawn Lisser, who could identify appellee as the robber. Jackson would not be permitted to testify that she had a miscarriage shortly after the robbery. The police officer, Linel Hunter, could testify that appellee shot at him during the Long John Silver's

robbery. Officer Hunter could also testify that he chased appellee and Martin from Long John Silver's into the Weeks' house. Hunter and other officers discovered appellee hiding in the Weeks home.

The trial court would not permit the videotapes of the Long John Silver's robberies or testimony from Brandee Weeks, Darnell Weeks, Patrolman Glontz, Patrolman Bruening or Detective Arko. Brandee Weeks would have testified that she saw appellee looking into the window of her home before the Long John Silver's robbery. After the robbery, appellee ran into her home. Darnell Weeks would also testify that appellee was in the home before and after the Long John Silver's robbery. He also saw appellee, Robert Martin and another man leave together in car within an hour of the Papa John's murder.

Glontz would have testified that appellee bit his fingers when arrested after the LJS robbery to disguise the prints. Bruening would testify as to clothing, boots, and shoes found in the Weeks home. Detective Arko would testify about a holster found at the scene of the Long John Silver's robbery.

As stated above, the trial court has discretion in the exclusion of evidence. See *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 25, 514 N.E.2d 394, 400–401. The evidence may have been admissible other acts evidence under Evid.R. 404(B), to show the identity of the Papa John's robbers. The trial court decided that the videotapes and certain witnesses would be merely cumulative and more prejudicial than probative. See Evid.R. 403.

The testimony of Jackson, Lisser, and Hunter established that appellee committed robberies of Long John Silver's, using similar methods as in the Papa John's robbery. The videotapes and other witnesses were unnecessary to establish the fact that appellee robbed the Long John Silver's restaurant using similar methods as in the Papa John's robbery. In this respect, the evidence was cumulative.

Appellee asserts that the testimony concerning clothes, shoes, and boots found in the Weeks home should be admissible, as these were the items worn by appellee and his co-defendant during the Papa John's robbery. If the prosecution can lay a foundation connecting these items to the Papa John's robbery, they would be admissible. The prosecution would also be allowed to introduce Darnell Weeks' testimony that he saw appellee and Martin leave in a car about one hour before the Papa John's robbery. This evidence was not cumulative to the other evidence concerning the Long John Silver's robbery. The prosecution should be allowed to present evidence which is presented for a purpose other than showing appellee committed a similar robbery at Long John Silver's. Therefore, the trial court erred in excluding all of the above-mentioned evidence.

Accordingly, this assignment of error is sustained.

The decision of the trial court is reversed. This cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MICHAEL J. CORRIGAN and BLACKMON, JJ., concur.