JOURNAL ENTRY AND OPINION
{¶ 1} Andre Allen ("Allen") appeals his conviction on various charges relating to his role in the murder of Jason Crites ("Crites"). Finding error in the proceedings below, we reverse and remand for a new trial.
 {¶ 2} Following a jury trial, Allen was convicted on July 19, 2002 of aggravated murder in violation of R.C. 2903.01 with a firearm specification under R.C. 2941.141, aggravated robbery in violation of R.C. 2911.01 with a firearm specification under R.C.2941.141, and aggravated burglary in violation of R.C. 2911.11
with a firearm specification under R.C. 2941.141. In a separate finding, the trial court found Allen guilty of having a weapon under disability in violation of R.C. 2923.13. On November 14, 2002, Allen was sentenced to 20 years for the aggravated murder conviction to be served consecutively with the three-year firearm specification. Allen also received 10 years for the aggravated robbery offense to be served consecutively with the three-year firearm specification and 10 years for the aggravated burglary offense to be served consecutively to the three-year firearm specification. The court imposed a one-year sentence for having a weapon under disability. All terms were to run concurrently with each other; accordingly, the total sentence was 23 years to life imprisonment.
 {¶ 3} The following facts give rise to this appeal.
 {¶ 4} Crites was shot and killed on December 28, 2001 by Andre Hill ("Hill") during a robbery and attempted burglary at Crites' residence on West 50th Street in Cleveland After struggling with his assailant, Crites was shot twice at close range and died at a local hospital a short time later.
 {¶ 5} Allen and Hill met each other in the county jail two or three years before the shooting. Allen's girlfriend, Brandy Hedge ("Hedge"), lived across the street from the victim. In December 2001, Allen told Hill about Crites, whom he described as a "drug boy" who sold "weed" and had a safe containing money in his residence. Allen discussed robbing and burglarizing Crites' residence with Hill. Allen wanted Hill to commit the offenses because Allen feared Crites would recognize him. Allen described the layout of the residence to Hill, including the location of a couch Hill could hide behind on an enclosed porch while he waited for Crites to return home. Allen told Hill Crites was a "stoner" who would not resist during a robbery.
 {¶ 6} On the morning of the shooting, Allen was in Bedford Municipal Court with Hedge. After appearing in court, Hedge and her brother dropped Allen off at Hill's residence. Later that same day, Christina Britton ("Britton"), Hill's girlfriend, overheard Allen talking to Hill about someone who had money and "weed" in a safe. Later that day, Allen and Hill met at a convenience store shortly before the shooting. On both occasions the men discussed the planned robbery and burglary.
 {¶ 7} Hill went to Crites' residence and hid behind the couch in the enclosed porch area described by Allen while waiting for Crites to return. Allen went to Hedge's residence and watched the events unfold from across the street.
 {¶ 8} Hill confronted Crites as he attempted to enter his residence. During a brief struggle, Crites was shot twice and collapsed in front of his residence. Both Allen and Hedge saw Crites collapse and attempted to give him assistance. Hill initially fled the scene but was later observed by Hedge nearby as she was being questioned by police. Both Hedge and Allen denied involvement or knowledge of who committed the offense. Crites' wallet and cell phone were missing and were never recovered.
 {¶ 9} In the month following the murder, Hedge made a written statement and admitted to police that Allen planned the crime with Hill. She claimed Allen broke down and told her the full story on the night of the murder. Allen was arrested a short time later and implicated Hill as the shooter. Allen admitted he had prior knowledge that Hill was going to commit the robbery and burglary. Hill was then arrested and confessed to the murder. He implicated Allen in planning the crime and in providing details about the victim and his residence. Hill maintained Allen encouraged him to commit the offenses. Hill provided police with a written confession, in primarily narrative form, of Allen's and his conduct leading up to the murder.
 {¶ 10} At trial, Hill was called to the stand to testify against Allen, but, with counsel present, invoked hisFifth Amendment right not to testify and the trial court declared him unavailable. Hill's statement was then read to the jury resulting, with other evidence, in Allen's conviction for his role in the murder.
 {¶ 11} Following his conviction, Allen filed this appeal advancing two assignments of error. Allen's second assignment of error is dispositive of the case so it will be addressed first.
 {¶ 12} Allen's second assignment of error reads as follows:
 {¶ 13} "Allowing the prosecution to introduce the statement that co-offender Andre Hill made to police implicating appellant as an accomplice in Crites' robbery and murder violated appellant's constitutional rights to due process and confrontation."
 {¶ 14} Allen raises three overlapping issues involving the admission of Hill's statement. First, Allen claims introduction of the statement violated his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution. Second, Allen suggests the state intentionally made Hill unavailable by charging him with capital murder, thus promoting his unavailability through litigation. Third, Allen claims Hill's statement was unreliable hearsay that should not have been admitted at trial. Additionally, Allen claims the admission of the statement was not harmless.
 {¶ 15} When the prosecution offers hearsay evidence against the accused in a criminal case, it prompts the court to question whether admission of that evidence would violate the Confrontation Clause. Tennessee v. Street (1985), 471 U.S. 409,413-14.
 {¶ 16} The Sixth Amendment's Confrontation Clause provides that, "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The United States Supreme Court has held that this bedrock procedural guarantee applies to both federal and state prosecutions.Crawford v. Washington (2004), 124 S.Ct. 1354, citing Pointerv. Texas (1965), 380 U.S. 400, 406.
 {¶ 17} We note that the right of confrontation requires that whenever possible, testimony and cross-examination should occur at trial. The purpose behind the Confrontation Clause is two-fold: (1) to allow a criminal defendant the right to confront his or her accusing witness face-to-face in open court for truth-testing cross-examinations; and (2) to give the jury an opportunity to judge the credibility of the witness through observation of the witness's demeanor. Mattox v. United States
(1895), 156 U.S. 237, 242-43.
 {¶ 18} The very recent United States Supreme Court decision in Crawford v. Washington, supra, transformed the landscape in which the admission of out-of-court statements are offered against an accused. A brief overview of the evolution of the law in the context of this case is helpful to the understanding of the new standard now in place under Crawford.
 {¶ 19} Historically, the right of confrontation has not been absolute. Where a declarant was deemed unavailable at trial and the state sought to offer his out-of-court statement against the accused, the court was required to determine whether the Confrontation Clause permitted the state to deny the accused his usual right to force the declarant to submit to cross-examination. California v. Green (1999), 399 U.S. 149.
 {¶ 20} The test to determine admissibility was outlined by the United States Supreme Court in Ohio v. Roberts (1980),448 U.S. 56. In Roberts, the Court held that the Sixth Amendment Confrontation Clause does not bar admission of an unavailable witness's statement against a criminal defendant if the statement bears "adequate `indicia of reliability.'" Id. at 66. To meet that test, evidence must either fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." In effect, Roberts carved out an evidentiary exception to the traditional standard by allowing testimony not subjected to cross-examination at trial.
 {¶ 21} In the instant case, the trial court applied the standard of Roberts and permitted the use of Hill's statement based on three findings: (1) the statement was reliable because it was consistent with the statement that Allen gave to police after his arrest; (2) adversarial testing of the statement would not enhance its reliability; and (3) it was admissible under Evid.R. 804(b)(3) as a statement against interest.
 {¶ 22} Traditionally, Ohio courts looked to the evidence rules to determine whether the declarant's statement was a "statement against interest." Evid.R. 804(B)(3) defines what constitutes a "statement against interest," and reads as follows:
"A statement that was at the time of its making so farcontrary to the declarant's pecuniary or proprietary interest, orso far tended to subject the declarant to civil or criminalliability, or to render invalid a claim by the declarant againstanother, that a reasonable person in the declarant's positionwould not have made the statement unless the declarant believedit to be true. A statement tending to expose the declarant tocriminal liability, whether offered to exculpate or inculpate theaccused, is not admissible unless corroborating circumstancesclearly indicate the trustworthiness of the statement."
 {¶ 23} Using Roberts, this court, in State v. Marshall
(2000), 136 Ohio App.3d 742, outlined the standard for admission of statements against interest as hearsay exceptions. The court held:
"To fall within the hearsay exception as a statement againstinterest under Evid.R. 804(B)(3), three conditions must besatisfied. State v. Gilliam (1994), 70 Ohio St.3d 17,635 N.E.2d 1242. First, the declarant must be unavailable. Adeclarant asserting his Fifth Amendment right againstself-incrimination and refusing to testify is consideredunavailable. Id.; State v. Landrum (1990), 53 Ohio St.3d 107,113, 559 N.E.2d 710.
"Second, to qualify as a statement against interest, it mustbe shown that the statement tended to subject the declarant tocriminal liability so that a reasonable person in the declarant'sposition would not have made the statement unless the declarantbelieved it to be true. Gilliam, Landrum, supra.
 "Finally, Evid.R. 804(B)(3) requires that corroboratingcircumstances clearly indicate the trustworthiness of thestatement before the statement against interest becomesadmissible. Landrum, Gilliam, supra. The fact that there aresome inconsistencies does not preclude admissibility, if thecircumstances establish the statement is trustworthy. Landrum,supra."
 {¶ 24} The United States Supreme Court, however, continued to struggle with the Roberts decision and how it was eroding the purpose behind the Confrontation Clause. The Court's plurality opinion in Lilly v. Virginia (1990), 119 S.Ct. 1887, outlined concerns about the dangers of admitting statements simply because they satisfied a `firmly rooted exception' to the hearsay rules. The Lilly plurality noted that the exception for statements against penal interest "encompasses statements that are presumptively unreliable." As a result, the plurality held that statements against penal interest cannot be admitted as a firmly rooted hearsay exception. Id.
 {¶ 25} In State v. Madrigal, the Supreme Court of Ohio continued to apply the Roberts test to out-of-court statements,
"The state may deny the accused the right to cross-examinationwithout violating the Confrontation Clause if the court deems theproffered out-of-court statements to be ` so trustworthy thatadversarial testing can be expected to add little to [thestatements `] reliability.' White v. Illinois (1992),502 U.S. 346, 357, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 860. That is, the right to confrontation is not absolute and `does not necessarily prohibit the admission of hearsay statements against a criminal defendant.' Idaho v. Wright (1990), 497 U.S. 805, 813,110 S.Ct. 3139, 3145, 111 L.Ed.2d 638, 651. Hearsay statements are deemed sufficiently reliable to allow their admission without the benefit of cross-examination when the statements (1) `[fall] within a firmly rooted hearsay exception,' or (2) contain `" adequate indicia of reliability. "' Ohio v. Roberts (1980),448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608."
 {¶ 26} State v. Madrigal (2000), 87 Ohio St.3d 378, 385.
 {¶ 27} The court explained, however, that in light of Lillyv. Virginia (1999), 527 U.S. 116, the court's previous holding that a statement against interest fell within a firmly rooted hearsay exception was no longer valid law. Id. at 386 (overruling in part State v. Gilliam (1994), 70 Ohio St.3d 17). Thus, theMadrigal ruling required courts to determine whether the statement contained adequate indicia of reliability. Madrigal,87 Ohio St.3d at 386. While Lilly narrowed Roberts by establishing that "non-self-inculpatory" statements by accomplices are presumptively unreliable and that accomplice confessions inculpating a criminal defendant do not fall within a "firmly rooted" exception to the hearsay rule, it did not eliminate concerns about protecting the Confrontation Clause's original purpose. In Madrigal v. Bagley (N.D. Ohio 2003),276 F. Supp.2d 744, an outgrowth of State v. Madrigal (2000),87 Ohio St.3d 378, the Supreme Court of Ohio held that the admission of two statements violated the defendant's constitutional rights under the Confrontation Clause, but nevertheless found the admission harmless. The federal court, however, granting a writ of habeas corpus, found the error was not harmless.
 {¶ 28} Debate on the Confrontation Clause has now come full circle. With Crawford, 124 S.Ct. 1354, the Confrontation Clause has regained its preeminence over previously carved `evidentiary' exceptions to its application. In Crawford, after completing a lengthy historical review of the principles behind the Confrontation Clause, the United States Supreme Court clarified its view on the erosions to the Confrontation Clause caused by the evidentiary exceptions. Id. "Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." Id.
 {¶ 29} Although the Court recognized that not all hearsay implicates the Sixth Amendment's core concerns, the focus inCrawford, as in the instant case, is on "testimonial" statements. The Court defined these "testimonial" statements in part as "ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id.
 {¶ 30} The court made clear that "statements taken by police officers in the course of interrogations are also testimonial even under a narrow standard." Id.
 {¶ 31} Although the facts in the instant case are distinguishable from the standard outlined under Lilly, they are not distinguishable from Crawford. Hill's statement was clearly testimonial. Although we recognize the trial court did not have the Crawford decision at the time of its decision and it properly applied the Roberts test, we are bound to apply the new law. We find, that under Crawford, the admission of Hill's testimonial statement violated Allen's right to confrontation under the Sixth Amendment. As such, we vacate Allen's conviction and remand the case back to the trial court for retrial.
 {¶ 32} We note that there is no real dispute that Hill was unavailable. The suggestion that Hill's unavailability was somehow "manufactured" by the state is without merit. The state consistently asserted that Hill was the shooter and Allen aided and abetted Hill. Hill invoked his Fifth Amendment right and was thus properly deemed to be "unavailable." State v. Gilliam
(1994), 70 Ohio St.3d 17.
 {¶ 33} We also recognize that Hill's statement was self-inculpatory as to all the legal elements of the offenses charged and, regardless of claims that the statement was "self-serving," it did not, in a legal context, shift blame or responsibility to Allen in order to absolve Hill. This court has previously held that a "voluntary confession, not made pursuant to a deal with the prosecution, and which implicates both the accomplice and the defendant has sufficient indicia of reliability." State v. Marshall (2000), 136 Ohio App.3d 742. Hill voluntarily confessed, there were no deals made, and Hill implicated himself as well as Allen; therefore, we would find that Hill's statement had sufficient indicia of reliability and would have been properly admitted under the Roberts test. Nevertheless, the inability of Allen to cross-examine Hill renders the statement inadmissible regardless of factors impacting its reliability. Allen's second assignment of error has merit; therefore, the conviction is vacated and the case is remanded for retrial. Allen's first assignment of error challenging the weight of the evidence is moot. App.R. 12.
Judgment reversed and case remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Karpinski, J., concur.