William D. Mason, Esq. Cuyahoga County Prosecutor, Mark Schneider, Esq. Assistant County Prosecutor, 8th Floor Justice Center 1200 Ontario Street Cleveland, Ohio 44113, for plaintiff-appellee.
Robert L. Tobik, Esq. Cuyahoga County Public Defender, Paul Kuzmins, Esq. Assistant Public Defender, 1200 West Third Street 100 Lakeside Place Cleveland, Ohio 44113, for defendant-appellant.
 JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Gregory Carter ("Carter"), appeals his conviction for aggravated robbery from the Cuyahoga County Court of Common Pleas, raising three assignments of error. For the following reasons, we affirm.
 {¶ 2} On January 12, 2003, Belinda West ("West") went to a gas station in the city of Cleveland to put gas in her vehicle. West testified that while she was pumping gas, Carter approached her, brandished a box cutter, held it to her side, and demanded money. West handed over a ten-dollar bill. Carter then returned to a vehicle where two other people were waiting and left the scene. West, with a friend, followed the vehicle, called police, reported the robbery and provided the license number, a description of the vehicle, and a description of what Carter was wearing. The Cleveland police subsequently made a radio broadcast of the descriptions, and a short time later the vehicle containing Carter was located and stopped by the police.
 {¶ 3} The driver, Terrence Cornelison ("Cornelison"), was advised of his rights and made a written statement to police. Cornelison's statement claimed he was driving around operating a borrowed vehicle when he picked up Carter and another male, Hezron Rumph ("Rumph"). Cornelison's statement did not implicate Carter, Rumph, or himself in the aggravated robbery. It did place them together in the vehicle at the time of the offense.
 {¶ 4} West later identified Carter from a photo array. She was unable to identify Cornelison or Rumph.
 {¶ 5} Carter, Cornelison and Rumph were tried together in a bench trial. During the state's case in chief, Cornelison's statement was read to the court. Cornelison, because of his status as a co-defendant, was not available for, or subjected to, cross-examination. At the conclusion of the state's case, the trial court granted the Rule 29 motions of both Cornelison and Rumph.
 {¶ 6} Carter testified and acknowledged being with both Cornelison and Rumph in the vehicle. He indicated they were driving around drinking and smoking crack cocaine. He claimed they came across West, who was seeking to purchase ten dollars' worth of crack cocaine. Carter claimed he had a "dummy" twenty-dollar rock, which he cut in half with the box cutter, and sold half of the rock to West for ten dollars. He denied robbing West and claimed she accused him of robbing her for selling her a dummy rock.
 {¶ 7} The trial court convicted Carter of aggravated robbery and sentenced him to a term of imprisonment of four years. Carter appeals, raising three assignments of error.
 {¶ 8} Assignment of Error #1: "The conviction was not supported by sufficient evidence where the state failed to present evidence that Mr. Carter used a deadly weapon."
 {¶ 9} The Supreme Court of Ohio has established the applicable standard for determining whether a conviction is supported by sufficient evidence:
{¶ 10} "The relevant inquiry is whether, after reviewing theevidence in a light most favorable to the prosecution, anyrational trier of fact could have found the essential elements ofthe crime proven beyond a reasonable doubt."
 {¶ 11} State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} Carter's conviction was for aggravated robbery. Aggravated robbery is defined as follows: "(A) No person, in attempting or committing a theft offense, as defined in section2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *." R.C.2911.01.
 {¶ 13} In this case, Carter argues there was no evidence to prove the deadly weapon element of the offense; specifically, whether the box cutter was capable of inflicting death. We have previously found that a box cutter is capable of inflicting death and may constitute a deadly weapon.
 {¶ 14} As this court outlined in State v. Tucker, Cuyahoga App. No. 81885, 2003-Ohio-3022: "R.C. 2923.11(A) defines `deadly weapon' as `any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.' This court has previously held that a `razor-like instrument' constitutes a deadly weapon. State v. Clark (1988), 43 Ohio App.3d 104,539 N.E.2d 702. Additionally, this court has upheld a conviction for felonious assault committed with a box cutter. State v. Barnes
(Aug. 10, 2000), Cuyahoga App. No. 76560, 2000 Ohio App. LEXIS 3630. Furthermore, the court of common sense holds that a box cutter may constitute a deadly weapon."
 {¶ 15} In the present case, police recovered the box cutter and West testified the blade was exposed and placed to her side by Carter during the robbery. West's testimony established the box cutter was used as a deadly weapon:
{¶ 16} "A. He had it in his hand and he pointed it towards me.I was facing him, and he had it pointed.
 {¶ 17} "Q. So he had it to your side like this (indicating)?
 {¶ 18} "A. Yeah.
 {¶ 19} "Q What were you thinking at that time?
 {¶ 20} "A. Was he going to cut me, or was he going to stabme.
 {¶ 21} "Q. What did you do?
 {¶ 22} "A. Gave him the money."
 {¶ 23} The fact that the box cutter was not tested for fingerprints is of no consequence. Carter admitted possessing the box cutter and claimed to have used it to split the "dummy" rock. The trial court evaluated all the facts and circumstances in the record and reached a decision. Appellate review of the trial court's determination is limited to whether there is sufficient probative evidence to support the trier of fact's finding as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386, 1997-Ohio-52. Upon our review, we find there was sufficient probative evidence for the trial court to find the essential elements of aggravated robbery beyond a reasonable doubt.
 {¶ 24} For the above reasons, Carter's first assignment of error is overruled.
 {¶ 25} Assignment of Error #2: "The conviction was against the manifest weight of the evidence."
 {¶ 26} In reviewing a claim challenging the manifest weight of the evidence, we are directed as follows: "the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. The power to reverse a judgment of conviction as against the manifest weight should be exercised with caution and only in exceptional cases in which the evidence weighs heavily against the conviction. Id.
 {¶ 27} Carter raises two issues under this assignment of error. First, Carter claims the trial court's determination that the box cutter was a deadly weapon is against the manifest weight of the evidence. Second, Carter argues that the trial court erroneously applied a preponderance of the evidence standard and that the evidence did not illustrate beyond a reasonable doubt that he committed aggravated robbery.
 {¶ 28} Carter's argument that the trial court applied a preponderance of the evidence standard rather than a beyond a reasonable doubt standard is without merit. Carter relies on statements by the court about his claim of a drug deal gone bad. While the court recognized "[l]ike anything else it is possible" and that "counsel did a good job making it appear plausible and reasonable," the court found considering all the circumstances that it "simply does not ring true." Clearly the court was evaluating Carter's claim in view of all of the evidence before it and considering the credibility of the witnesses. Further, simply because the trial court outlines that something is possible or compliments defense counsel on a plausible and reasonable defense does not mean it applied the wrong legal standard to make its decision.
 {¶ 29} Carter's attempt to again argue that the evidence did not establish that the box cutter was a deadly weapon must fail. The court properly evaluated the testimony about the manner in which the box cutter was displayed, the demand for money contemporaneous with the display, the proximity of its placement at the victim's side, and the fear instilled in the victim compelling her to give up her money. Further, we have already indicated that a box cutter can be used as a deadly weapon.
 {¶ 30} Lastly, the fact that the victim followed Carter and obtained the license plate of the vehicle he was in does not make her version of events inconsistent with her fear at the initial time of the robbery. The trial court properly evaluated all the testimony, including Carter's claim of a "purported bad drug deal," and concluded West's testimony was credible.
 {¶ 31} Upon our review of the record, we find Carter's conviction was not against the manifest weight of the evidence. Carter's second assignment of error is overruled.
 {¶ 32} Assignment of Error #3: "Mr. Carter was denied his constitutional right to confrontation when the State of Ohio was permitted to read a co-defendant's statement into the record that was not made under oath and subject to cross examination."
 {¶ 33} In his third assignment of error, Carter claims the use of Cornelison's statement by the state in its case in chief violated his Sixth Amendment rights under the Confrontation Clause. Cornelison's status as a co-defendant at trial made him unavailable to testify. The state introduced Cornelison's statement, claiming that it was not hearsay, that it was essentially exculpatory, and that, with Cornelison's Rule 29 dismissal from the case, Cornelison was free and available to testify for Carter.
 {¶ 34} The Confrontation Clause of the Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In the recent case of Crawford v. Washington (2004), 541 U.S. 36, the Unites States Supreme Court held that the testimonial statement of a witness who is absent from trial is to be admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine. Id. at 39. The court further stated that the term "testimonial" applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. Id. at 53.
 {¶ 35} The State's argument that Cornelison's statement was not testimonial is without merit. We directly addressed this issue in State v. Allen, Cuyahoga App. No. 82556, 2004-Ohio-3111. "Although the [Crawford] Court recognized that not all hearsay implicates the Sixth Amendment's core concerns, the focus in Crawford, as in the instant case, is on `testimonial' statements. The Court defined these `testimonial' statements in part as `ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' and `extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' and `statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id.
 {¶ 36} "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the United States Constitution actually prescribes: confrontation." Crawford, 241 U.S. at 54. Clearly Cornelison's statement was testimonial and should not have been used.
 {¶ 37} In this case, Cornelison made his statement while he was being interrogated by police officers. His statement did not implicate Carter in the robbery, but did place Carter, Rumph and himself in the vehicle at the time of the offense. Since Cornelison's statement was taken in the course of a police interrogation, it was a testimonial statement. See Allen,
supra. As we found in Allen, "statements taken by police officers in the course of interrogations are also testimonial even under a narrow standard." Id. quoting Crawford,541 U.S. at 29. Since Cornelison was unavailable to testify, having invoked his Fifth Amendment right, and Carter did not have a prior opportunity for cross-examination, the admission of the statement violated Carter's Sixth Amendment right to confrontation. Further, even if deemed "reliable," it should not have been admitted under the Crawford standard. See Crawford,241 U.S. 36. Nevertheless, this determination does not require reversal if no prejudice resulted and the error was harmless.
 {¶ 38} The Supreme Court of Ohio has stated: "A violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt." State v. Moritz (1980),63 Ohio St.2d 150, at paragraph two of the syllabus; see also, State v.Hubbard, Cuyahoga App. No. 83384, 2004-Ohio-4627.
 {¶ 39} Carter argues that the statement was prejudicial because it linked him to the crime and placed him in the car at the time the alleged robbery was committed. We do not find that this prejudiced Carter.
 {¶ 40} Carter voluntarily testified and he not only confirmed Cornelison's description of events, he also adopted his version. Carter even went further to describe a purported bad drug deal between himself and West. Nothing in Cornelison's statement or in Carter's testimony can be construed as depriving Carter of a fair trial. The erroneous use of the statement was harmless beyond a reasonable doubt.
 {¶ 41} For this reason, Carter's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., and James D. Sweeney, J.*, Concur.
* Sitting by assignment: Judge James D. Sweeney, retired, of the Eighth District Court of Appeals.