[Cite as *State v. Beauford*, 2011-Ohio-5379.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

THE STATE OF OHIO,

     Plaintiff-Appellee,

v.

DAMIEN D. BEAUFORD,

     Defendant-Appellant.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Patricia A. Delaney, J.

Case No. 11CA6

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas Court, Case No. 10-CR-497D |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 6, 2011 |
| APPEARANCES: | |

For Plaintiff-Appellee

JAMES J. MAYER, JR.
PROSECUTING ATTORNEY
RICHLAND COUNTY, OHIO

BY: JILL M. COCHRAN
Assistant Richland County Prosecutor
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

DALE M. MUSILLI
105 Sturgs Avenue
Mansfield, Ohio 44903

*Hoffman, J.*

{¶ 1} Defendant-appellant Damien D. Beauford appeals his conviction and sentence entered by the Richland County Court of Common Pleas, on one count of domestic violence, following a jury trial. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶ 2} On August 6, 2010, the Richland County Grand Jury indicted Appellant on one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the third degree. The trial court scheduled the matter for jury trial on December 9, 2010.

{¶ 3} Prior to trial, the State filed a motion in limine, seeking to prevent Appellant from presenting testimony regarding the fact Sarah Lybarger, the victim, was on probation as the result of a misdemeanor offense she committed against Appellant. The State also sought to exclude the testimony of Lybarger's probation officer. The trial court conducted a hearing on the motion on the morning of trial. At that time, Appellant made an oral motion to exclude the 9-1-1 calls surrounding the incident. The trial court ruled testimony revealing Lybarger was on probation, and one of the conditions of her probation was she was to have no contact with Appellant, was admissible. The trial court found the testimony of Lybarger's probation officer to be not relevant.[1] The trial court ruled the 9-1-1 calls were admissible under Evid. R. 803(1), present sense impression.

{¶ 4} Sarah Lybarger testified she and Appellant have a three-year old daughter together (hereinafter referred to as "A"). They lived together for a brief time between September, 2008, and February or March, 2009. Lybarger acknowledged she was on

---

[1] Appellant proffered the probation officer's testimony at the start of his case.

probation. She explained she had been convicted of aggravated menacing in 2008, or 2009, following an incident with Appellant. As a result of the conviction, a no contact order was issued, prohibiting Lybarger from having contact with Appellant, and Appellant from having contact with Lybarger.

**{¶ 5}** Lybarger testified on June 22, 2010, she awoke to repeated calls on her phone from a restricted number. When she recognized one of the telephone numbers as belonging to Appellant's father, she answered. Appellant was on the other end of the line. He informed her he was leaving for Indianapolis for a week and wanted to see A. Lybarger agreed to meet Appellant at Liberty Park.

**{¶ 6}** Upon their arrival at the park, Lybarger and A exited their vehicle. Appellant exited his vehicle, gave a small item to A, and then started yelling at Lybarger about her dating other men. Appellant grabbed Lybarger's cell phone out of her hand. He placed one hand on her neck, and with his free hand, scrolled Lybarger's phone. Appellant called a number and asked the individual who answered, "Are you f---ing my baby mom? Are you dating my baby mom?" Lybarger was able to break away from Appellant's grasp. She grabbed her phone and started to run to the other side of the park. Appellant caught Lybarger, picked her up by the neck, and slammed her on the ground. Lybarger blacked out momentarily. She suffered injuries to her shoulder and the back of her head.

**{¶ 7}** When Lybarger came to, she noticed Appellant had moved his vehicle and was sitting inside it with A. Lybarger approached a black woman who was using a cell phone. Lybarger determined from the context of the woman's conversation, she was on the phone with 9-1-1, and provided the woman with her name. On cross-examination,

Lybarger stated she had been released from probation in June, 2009, as she had planned on joining the National Guard. She did not believe she would be in violation of the no contact order if she saw Appellant on the day of the incident. Following the incident, Lybarger was returned to probation because she decided not to join the National Guard.

{¶ 8} Lawanda Jefferson, a 9-1-1 operator, testified she was on the 7:00 a.m. to 3:00 p.m. shift on July 22, 2010. The State played the recordings of three 9-1-1 calls received that day. Jefferson identified her own voice as well as the voices of two other dispatchers on duty during her shift. Jefferson answered the first call. The caller informed her of a fight between a boyfriend and girlfriend at Liberty Park, during which the man slammed the woman to the ground. The caller stated a two-year old child was involved. The caller provided Jefferson with a description of the man and his vehicle.

{¶ 9} At approximately the same time, Jefferson's partner, Suzanne Meister, answered a second 9-1-1 call. The second caller informed the dispatcher a man and a woman were having a fight at Liberty Park, and the man slammed the woman to the ground then took the woman's daughter. The second caller asked Lybarger for her name, and the caller provided the information to the dispatcher. Mark Abrams, a dispatcher who was also on duty on July 22, 2010, also answered a 9-1-1 call from Appellant. Appellant advised Abrams he was at Liberty Park and had a no contact order with Lybarger. Appellant indicated Lybarger was also at the park with their daughter. When Lybarger tried to pull the child away from him, Appellant pushed her away and she fell on the ground. Appellant stated he was just trying to leave the park.

{¶ 10} After hearing all the evidence and deliberating, the jury found Appellant guilty as charged. The trial court sentenced Appellant to a term of incarceration of three years on the domestic violence conviction, and a term of incarceration of 18 months on a probation violation for failing to maintain good behavior and failing to abide by the no contact order with Lybarger. The trial court ordered the sentences be served consecutively.

{¶ 11} It is from these convictions and sentence Appellant appeals, raising the following assignments of error:

{¶ 12} "I. THE TRIAL COURT ERRED IN PERMITTING EVIDENCE OF THE CONTENTS OF THE 911 CALLS CONCERNING THE JULY 10, 2010 INCIDENT. (PRESENT SENSE IMPRESSION AND "NOT TESTIMONIAL" BUT BOTH OF THEM USED THAT WAY BY PROCSECUTOR. IF NOT, THEN NOT RELEVANT TO CHARGES, BECAUSE "NOT USED TO PROVE THE FACTS ASSERTED." [SIC]

{¶ 13} "II. THE TRIAL COURT ERRED IN FAILING TO PERMIT APPELLANT TO IMPEACH THE ALLEGED VICTIM BY ELICITING EVIDENCE OF MOTIVE UNDER EVID. R. 616(A)."

I

{¶ 14} In his first assignment of error, Appellant maintains the trial court erred in permitting the recordings of the 9-1-1 calls received on July 22, 2010, to be played for the jury. Specifically, Appellant asserts the statements contained in the calls were testimonial, and the trial court's admission of the evidence violated his right to confront witnesses against him as reasoned in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Alternatively, Appellant argues the statements are

hearsay and should not have been admitted as present sense impressions because the callers were unidentifiable.

{¶ 15} Appellant did not raise the *Crawford* argument before the trial court. As such, we review this portion of the assignment of error under a plain error analysis.

{¶ 16} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 448 N.E.2d 452. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Stojetz,* 84 Ohio St.3d 452, 455, 705 N.E.2d 329, 1999–Ohio–464.

{¶ 17} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The right of confrontation requires, whenever possible, testimony and cross-examination to occur at trial. *State v. Allen,* 10th Dist. No. 82556, 2004-Ohio-3111, at ¶ 17.

{¶ 18} In *Crawford v. Washington*, supra, the United States Supreme Court held the Confrontation Clause encompasses "testimonial" as opposed to nontestimonial evidence. Although the Court did not define "testimonial," the Court discussed three possible definitions of that term, which include: (1) ex parte in-court testimony or its functional equivalent, such as affidavits and prior testimony that the defendant was unable to cross-examine, or pretrial statements that declarants would reasonably be expected to be used in a prosecution; (2) extra-judicial statements contained in formal

testimonial materials such as depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness to believe the statement would be available for use at a later trial. Id. at 51-52.

{¶ 19} In *Davis v. Washington* (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224*,* the United States Supreme Court further considered the meaning of the term "testimonial." The Court found the Confrontation Clause applies only to testimonial hearsay and not to statements made "to enable police assistance to meet an ongoing emergency." Id. at 2277. In *Davis,* the victim had made a 911 emergency call, and in the course of that call incriminated the defendant. The Supreme Court, in affirming the lower court's admission of the statements, held:

{¶ 20} "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution." Id. at 2273-2274.

{¶ 21} Appellant contends *Davis* is distinguishable from the matter sub judice because the individual placing the 9-1-1 call in *Davis* was the actual victim while the individuals placing the 9-1-1 calls herein were anonymous witnesses. We disagree.

{¶ 22} In the case of 9-1-1 calls, the *Davis* Court reasoned, the declarants are generally "speaking about events *as they [are] actually happening * * *.*" (Emphasis sic.) Id. at 2276. 9-1-1 callers are typically facing ongoing emergencies. Id. Under these exigent circumstances, the callers are not testifying as witnesses, and their statements

do not qualify as testimonial in nature. The callers in this case were seeking help for the victim and her daughter against a perceived physical threat. We find the fact the callers were not the victims of a crime does not, in and of itself, change the nature of their statements from nontestimonial to testimonial.

{¶ 23} The statements made by the individuals calling 9-1-1 did not constitute testimonial evidence which violated Appellant's confrontation rights because the primary purpose of the calls was to seek police assistance or aid during an ongoing emergency.

{¶ 24} Accordingly, we find no error, plain or otherwise, in the trial court's admission of the 9-1-1 calls.

{¶ 25} Appellant further maintains the trial court erred in admitting the 9-1-1 calls under the present sense impression exception to the hearsay rule because the witnesses were unidentifiable. First, under Evid. R. 803 the availability of the declarant is not dispositive of the admissibility of present sense impressions exceptions to the hearsay rule. Further, Appellant's assertion a witness must be identifiable even if unavailable is belied by the Rules of Evidence. The 1980 Staff Notes to Evid. R. 804 expressly state, "Under Rule 804(A)(5) if a witness cannot be compelled to appear or if his residence or existence is unknown, he is unavailable." Identity is not a requirement.

{¶ 26} Appellant's first assignment of error is overruled.

II

{¶ 27} In his second assignment of error, Appellant maintains the trial court erred in limiting his impeachment of Lybarger by evidence of motive.

{¶ 28} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (2009), 122 Ohio St.3d 297, ¶ 24. "The term

'abuse of discretion' connotes more than an error of law or of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157 (Citations omitted).

{¶ 29} Appellant attempted to elicit evidence from Lybarger's probation officer to show Lybarger had a motive for fabricating her testimony because she was fearful of being arrested herself. The trial court excluded the evidence as not relevant.

{¶ 30} Evid. R. 616 provides, in pertinent part:

{¶ 31} "In addition to other methods, a witness may be impeached by any of the following methods:

{¶ 32} "**(A) Bias**

{¶ 33} "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

{¶ 34} Lybarger herself testified she had been placed on probation as the result of an aggravated menacing conviction involving Appellant. Lybarger also detailed her understanding of her probation status at the time of the offense. The proffered testimony of Angela Lindsey, Lybarger's probation officer, was consistent with Lybarger's testimony and would have been largely cumulative. Accordingly, we find the trial court did not abuse its discretion in limiting Appellant's further attempts to impeach Lybarger.

{¶ 35} Appellant's second assignment of error is overruled.

{¶ 36} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Delaney, J. concur

s/ William B. Hoffman
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin
HON. W. SCOTT GWIN


s/ Patricia A. Delaney
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

THE STATE OF OHIO,                    :
                                       :
    Plaintiff-Appellee,           :
                                       :
v.                                     :          JUDGMENT ENTRY
                                       :
DAMIEN D. BEAUFORD,                    :
                                       :
    Defendant-Appellant.          :          Case No. 11CA6


For the reasons stated in our accompanying Opinion, the judgment of the

Richland County Court of Common Pleas is affirmed. Costs to Appellant


s/ William B. Hoffman
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin
HON. W. SCOTT GWIN


s/ Patricia A. Delaney
HON. PATRICIA A. DELANEY