JOURNAL ENTRY AND OPINION
{¶ 1} Jamall Jenkins, ("Jenkins") appeals from his conviction received in the Cuyahoga County Court of Common Pleas. Jenkins argues that the trial court committed plain error when it allowed hearsay testimony and when it violated his constitutional right to cross-examine witnesses. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case arose from the events that occurred on July 2 and July 3, 2005. During that time, M.W.[1], the victim ("victim"), lived with her mother A.W. ("mother"), her three sisters, her two brothers, and her two nieces at 2644 East 115th Street in Cleveland, Ohio. During the evening hours of July 2, 2005, the victim argued with both her older and younger sisters and left the home. The victim told her oldest sister that she was leaving but that she would return when her mother came home.
 {¶ 3} The victim's older sister contacted her mother and told her that the victim ran away from home. The victim's sister then contacted the Cleveland Police and made a missing person's report. Police officers responded to 2644 East 115th Street but were unable to locate the victim.
 {¶ 4} During this time, the victim walked around the streets to calm herself. The victim called home and spoke with her oldest sister, who told the victim that she had called the police and that the victim would be going "downtown." The victim stated that she did not want to go to the Juvenile Detention Center so she continued to walk around the streets. While doing so, a male friend of her mother's known to the victim as "D," picked her up, bought her something to eat at McDonald's and attempted to bring her home. However, the victim saw police officers at her home so she ordered "D" to let her out of the car before he reached her home.
 {¶ 5} The victim ran through a nearby field and encountered M.A., and A.C., two juveniles that the victim knew from the neighborhood. The three juveniles walked around the field while the victim told the two boys what had happened at home and that she needed a place to stay that night. A.C. contacted Jenkins, known to the two boys as Opie, and Jenkins arrived at the field shortly thereafter. Jenkins drove the three juveniles in his car to his house located at 11509 Mount Overlook Avenue in Cleveland, Ohio.
 {¶ 6} After arriving at Jenkins' house, the group went up two flights of stairs to Jenkins' bedroom in the attic. Jenkins turned on the television and the group began watching a movie. After a few minutes, Jenkins and A.C. went outside, leaving M.A. and the victim alone. The victim stated that she and M.A. had consensual sex in the attic and that M.A. used a condom. Afterwards, Jenkins and A.C. returned to the attic. While on the stairs going up to the attic, Jenkins stated that the victim could stay over only if she had sex with him. The victim told M.A. and A.C. that she did not want to have sex with Jenkins.
 {¶ 7} The victim stated that she fell asleep on the bed and awoke to find Jenkins on top of her with his pants down. The victim stated that Jenkins had a sandwich bag on his penis and he forced her to lie on the bed. The victim reported that Jenkins retrieved a handgun from the television stand and placed the weapon on the pillow next to her head. The victim stated that she said no and began to cry, but Jenkins continued to have sex with her. The victim reported that when Jenkins finished, he placed the handgun in a Nike shoe box. She also stated that A.C. forced her to have sexual intercourse after Jenkins finished. The victim stated that she did not want to have sex with A.C., but he forced her. After the assault, the victim stated that she was scared, but that she spent the night in the attic because she did not want to go to the Juvenile Detention Center. The next morning, the victim left Jenkins' house and went home.
 {¶ 8} M.A., who testified at trial, stated that he did have sexual intercourse with the victim, and that it was consensual. M.A. also stated that both he and A.C. were in the room when Jenkins had sex with the victim. M.A. stated that the victim did not want to have sex with Jenkins, that the victim said no when Jenkins approached her, and that she cried while Jenkins had sex with her. However, M.A. also stated that the victim engaged in consensual intercourse with A.C. and that he did not see Jenkins use a handgun.
 {¶ 9} Initially, the victim did not tell anyone about what happened to her at Jenkins' house. However, after her older sister and mother began hearing rumors that the victim had been raped, the victim told her mother. Specifically, the victim's mother stated that she received threats from A.C. and M.A and their friends. Additionally, neighborhood boys began taunting the victim, stating that they could have sex with her too. After the victim told her mother, her mother contacted the Cleveland Police Department and took the victim to University Hospital.
 {¶ 10} The victim and her mother gave their statements to Detective Strickler. In her initial statement to police, the victim stated that M.A. also raped her. The victim reported that she did not want anyone to know that she had engaged in consensual sexual intercourse with M.A. Prior to trial, the victim told prosecutors that she had in fact lied to the police, and that M.A. did not rape her.
 {¶ 11} Detective Strickler obtained the identities of M.A., A.C., and Jenkins and acquired written statements from M.A. and A.C. A warrant was obtained for Jenkins and he was arrested pursuant to that warrant. Detective Strickler and Detective Georgia Hussein ("Detective Hussein") also obtained a search warrant for the attic of 11509 Mount Overlook Avenue. During the execution of the search warrant, Detectives recovered condom wrappers, two shoe boxes, and Glad sandwich baggies located under the coils of a couch in the attic.
 {¶ 12} On August 26, 2005, the Cuyahoga County Grand Jury issued a six-count indictment, charging Jenkins with rape, kidnapping, having a weapon while under disability, unlawful sexual conduct with a minor, and two counts of intimidation of a crime victim or witness. Jenkins pleaded not guilty and exercised his right to a jury trial. The State of Ohio ("State") presented four witnesses, the victim's mother, the victim, M.A., and Detective Hussein. Jenkins did not present any witnesses and the trial court denied his Crim.R. 29 motion for acquittal.
 {¶ 13} On November 21, 2005, the jury returned a verdict of guilty of sexual battery, the lesser included offense of rape, and unlawful sexual conduct with a minor. The jury found Jenkins not guilty of the remaining charges. On December 6, 2005, the trial court sentenced Jenkins to the Lorain Correctional Institute for one year on the sexual battery charge and six months on his conviction for unlawful sexual conduct with a minor. The trial court ordered the prison terms to run concurrent with each other and found Jenkins to be a sexually oriented offender.
 {¶ 14} Jenkins appeals, raising the two assignments of error contained in the appendix to this opinion.
 {¶ 15} In his first assignment of error, Jenkins argues that the trial court committed plain error when it failed to strike the mother's hearsay testimony. Specifically, Jenkins objects to the mother's testimony concerning what she heard about the rape of her daughter, and the alleged threats made by A.C., M.A., and their friends. Jenkins also finds error with the victim's testimony that her family received threats and that neighborhood boys were taunting her. This assignment of error lacks merit.
 {¶ 16} We first note that Jenkins' trial counsel failed to object to the alleged hearsay testimony and, therefore, we address this assignment of error under a plain error standard of review. "An error not raised in the trial court must be plain error for an appellate court to reverse."State v. Alexander, Cuyahoga App. No. 87109, 2006-Ohio-4760; Crim.R. 52(B). In order to prevail under a plain error analysis, Jenkins bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Alexander, supra. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id, citing State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 17} "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In the present case, the testimony elicited from the mother concerning what she heard about the rape was part of a long line of questioning in which the prosecutor elicited from the witness the course of the investigation and how the police became involved. The answers given in this type of questioning are not hearsay, because the witness did not give this information for the truth of the matter asserted, that is, to show that a rape occurred.
 {¶ 18} Our Ohio Supreme Court addressed this issue and held as follows:
 "The testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. * * * The testimony was properly admitted for this purpose." State v. Thomas (1980), 61 Ohio St.2d 223; State v. Byrd, Cuyahoga App. No. 82145, 2003-Ohio-3958.
 {¶ 19} We find that the mother's statements about the rape did not constitute impermissible hearsay. We therefore conclude that the trial court did not commit error, plain or otherwise, in allowing the witness's testimony.
 {¶ 20} Additionally, the victim's and mother's statements concerning the threats does not rise to the level of plain error. As stated above, in order to prevail under a plain error analysis, Jenkins must prove that but for the error, the outcome at trial clearly would have been different. Alexander, supra. Even if we were to assume that the victim's and mother's statements concerning the threats constituted impermissible hearsay, the error was harmless. The jury found Jenkins not guilty of the crimes of intimidation of a crime victim or witness. Accordingly, Jenkins cannot meet his burden under the plain error analysis.
 {¶ 21} Based on the above, Jenkins' first assignment of error is overruled.
 {¶ 22} In his second assignment of error, Jenkins argues that the trial court violated his constitutional right to cross-examine witnesses when it allowed the hearsay testimony of the mother. Specifically, Jenkins claims that because the victim and her mother testified to statements made by out-of-court declarants, his constitutional right to cross-examine those witnesses was violated. This assignment of error lacks merit.
 {¶ 23} Jenkins' trial counsel failed to object to this alleged error and, therefore, Jenkins has waived all but plain error. Accordingly, we will review this assigned error under the plain error analysis enunciated above.
 {¶ 24} The Confrontation Clause of the Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, the United States Supreme Court held that the testimonial statement of a witness who is absent from trial is to be admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine. Id.; State v. Carter, Cuyahoga App. No. 84036,2004-Ohio-6861.
 {¶ 25} The State argues that the statements at issue are not testimonial. We agree. This court directly addressed this issue inState v. Allen, Cuyahoga App. No. 82556, 2004-Ohio-3111:
 "Although the [Crawford] Court recognized that not all hearsay implicates the Sixth Amendment's core concerns, the focus in Crawford, as in the instant case, is on `testimonial' statements. The Court defined these `testimonial' statements in part as `ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' and `extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' and `statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id.
 {¶ 26} In the present case, the statements made by A.C., M.A., their friends, and the victim's eldest sister are not testimonial. The statements do not conform to the myriad of forms a testimonial statement might take, such as an affidavit, a custodial examination, prior testimony, or confession.
 {¶ 27} Nonetheless, even if we were to determine that a constitutional violation took place, such violation is harmless. The Supreme Court of Ohio has stated that "[a] violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt."State v. Moritz (1980), 63 Ohio St.2d 150; Carter, supra.
 {¶ 28} The statements at issue did not prejudice Jenkins because, as stated above, the jury found him not guilty of intimidation of a crime victim or witness. Additionally, Jenkins' convictions for sexual battery and unlawful sexual conduct with a minor are supported by the victim's testimony and the testimony of M.A. Specifically, the victim testified that Jenkins forcibly engaged in sexual intercourse with her against her will. Additionally, M.A. testified that the victim did not want to have sex with Jenkins, that Jenkins had sex with the victim even though she said no, and that the victim cried while Jenkins had sex with her. Accordingly, even if we were to find an error with the statements, the error was harmless beyond a reasonable doubt.
 {¶ 29} Based on the above, the trial court did not violate Jenkins' constitutional right to cross-examination when it allowed the testimony of the victim and the victim's mother. Jenkins' second assignment of error is overruled.
JUDGEMENT AFFIRMED.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A. J., and SEAN C. GALLAGHER, J., CONCUR
 Appendix Assignments of Error:
 "I. The trial courts failure to strike the hearsay testimony ofAngellet Woody was plain error under rule 52(B) of the Ohio Rules ofCriminal Procedure.
II. Whether the trial court violated the defendant-appellant'sconstitutional right to cross-examination when it allowed into evidencethe hearsay testimony of Angellet Woody."
[1] This court protects the identity of all juvenile victims.